# Illinois Official Reports

## Appellate Court

---

### *People v. Fields*, 2017 IL App (1st) 110311-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY FIELDS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0311 |
| Filed | March 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-2886; the Hon. William Hooks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Shawn O'Toole, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Peter Fischer, and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a jury trial in the circuit court of Cook County, defendant Anthony Fields was convicted of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008)) and being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2008)). The trial court imposed a 21-year sentence for armed robbery, which included a 15-year enhancement for the use of a firearm and a concurrent 10-year sentence on the conviction of being an AHC. Defendant appealed, arguing (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of either charge, (2) the 15-year enhancement of his sentence for armed robbery is unconstitutional, and (3) he received ineffective assistance of counsel. On February 11, 2014, we issued an opinion, modified upon denial of rehearing, affirming his armed robbery conviction but reversing the AHC conviction. *People v. Fields*, 2014 IL App (1st) 110311. In September 2016, our supreme court issued a supervisory order directing us to reconsider that judgment in light of its decision in *People v. McFadden*, 2016 IL 117424. We now affirm defendant's conviction for AHC as well as armed robbery.

¶ 2                                  BACKGROUND

¶ 3      The record on appeal discloses the following facts. The State charged defendant with armed robbery and being an AHC. Prior to trial, defendant's counsel filed a motion to suppress a show-up identification by the victim, Felicia Rowell. Following a hearing, the circuit court denied the motion to suppress.

¶ 4      Defendant's counsel also filed a motion *in limine* to bar admission of his 2005 conviction for unlawful use of a weapon and his 2006 conviction for armed robbery as impeachment. Fields's counsel argued that the similarity of the prior convictions to the armed robbery charge rendered the evidence unfairly prejudicial. The record shows that the trial judge granted this motion, stating that while Fields's testimony could reopen the issue, the judge could not envision a fair trial if the prior convictions were ruled admissible. The trial judge also asked how Fields's counsel intended to handle the AHC charge. Fields's counsel responded that the defense would agree with the State to stipulate to the fact that Fields had two qualifying prior convictions, without specifying the exact nature of those convictions.

¶ 5      At trial, Rowell testified that on December 24, 2009, at approximately 10:15 a.m., she went to the Happy Food convenience store at the corner of 115th Street and Princeton Avenue in Chicago. Rowell carried $185 in cash to complete her Christmas shopping. Rowell stated that, once inside the store, she saw the cashier behind the counter, while Fields and another man stood next to an ice cream freezer. Rowell looked at Fields and the other man, and she was unsure whether they were in line to check out. They stepped aside, and Rowell got into the line to check out. Rowell further stated that, while in line, she looked at the cashier, while Fields and the other man stood one or two feet away from her, facing her.

¶ 6      Rowell purchased a pack of cigarettes, taking the $185 out of her pocket and returning the remainder to her top jacket pocket as she left the store. According to Rowell, as she turned north, she heard Fields say, "What up?" Looking at Fields over her right shoulder, Rowell heard Fields say, "Let me get that." Rowell testified that she then saw Fields holding a black gun at his side, pointed at her. Rowell then looked back at Fields's face. Rowell also testified that she removed her money from her jacket pocket with her right hand and Fields grabbed the money with his left hand.

¶ 7        Rowell further testified that she continued to look at Fields in the face, but there was a moment of awkward silence. According to Rowell, she said, "Dude, it's Christmas Eve. I've got kids." Rowell stated that Fields responded, "Remember my face. This [is] your lucky day. Get in your car." Moreover, Rowell stated that she did look at Fields's face noting he was a dark-skinned male, with hair on his face, wearing a black skull cap, a black jacket with a red "H" on it, denim jeans, and a black hoodie. She described Fields as approximately 5 feet 7 inches, but she said she just knew that he was taller than her own height, 5 feet 5 inches. She also described Fields as chubby, weighing between 180 and 200 pounds. She described the other man as light-skinned and slender, taller than Fields, and wearing a red jacket. Rowell entered her car from the passenger side and drove away. Rowell estimated the time from her entry to the store to this point was approximately five minutes.

¶ 8        Rowell arrived home approximately five minutes later. Rowell testified that she was hysterical. When Rowell walked through the door, her husband, children, and brother were there. According to Rowell, her brother was on the telephone with their mother. Rowell announced that she had been robbed, took the telephone from her brother, and told their mother she had been robbed. Rowell's mother advised her to report the offense to the police. Rowell went to a police station on 103rd Street, where she was referred to the fifth district police station on 111th Street. Rowell provided a statement to police at the fifth district station.

¶ 9        Chicago police officer Edgar Neal testified that he worked at the front desk at the fifth district police station on December 24, 2009. After refreshing his recollection, Officer Neal stated that Rowell described Fields as a black male with a dark complexion and brown eyes, wearing a black skull cap and a black hoodie with a red "T" on it, 28 to 30 years old, 5 feet 6 inches tall, and weighing 190 to 200 pounds. Officer Neal could not recall whether the flash message mentioned Fields having facial hair. Officer Neal sent out a flash message by radio about the crime, but the police did not locate anyone meeting the description on that day.

¶ 10        Rowell testified that on January 21, 2010, while driving her children to school, she saw Fields standing outside Happy Food, wearing the same clothing he wore during the robbery. Rowell realized the jacket bore a red "H," rather than a "T." She stared at Fields while at a stop sign; Fields did not recognize her. Rowell took her children to school, then drove to the fifth district police station and showed her original complaint to an officer on duty. The police did not locate Fields that day.

¶ 11        Further, Rowell testified that on January 22, 2010, she again saw Fields standing at the corner of 115th Street and Princeton Avenue. Fields again drove to the police station, where an officer said she would have to wait 30 to 60 minutes for an officer to escort her to search for Fields. Rowell said she refused, responding that Fields would be gone by then. Rowell saw Fields at the same location during her drive home. Upon arriving home, she telephoned the police. Rowell stated that she lived on the west side of the 115th block of Princeton Avenue and told the police dispatcher she could see Fields while she was speaking to the dispatcher. Rowell told the officer that she would meet the police at 115th Street and Harvard Avenue because she did not want them arriving at her house.

¶ 12        Chicago police officer Michael Kavanaugh testified that he and his partner responded to a dispatch call at approximately 2 p.m. on January 22, 2010, about a person wanted at 115th Street and South Princeton Avenue. The person described by police computer was a black male, 28 years old, approximately 5 feet 6 inches, dark complexion, hairy face, and wearing a black jacket with a red "H" on the front. When they arrived, there was no one in front of the

Happy Food store, so the police entered the store. Officer Kavanaugh testified that a man matching the description, except for his height, was inside the store; he identified the man in court as Fields. The police detained Fields, handcuffed him, and brought him outside the store.

¶ 13 According to Officer Cavanaugh, he asked Officers Novy and Coutinho, who also responded to the police dispatch call, whether they could bring Rowell to 115th Street and Princeton Avenue. Officer Cavanaugh testified that Officers Novy and Coutinho returned approximately two minutes later. Officer Cavanaugh stated that he removed Fields from his police car as the other officers arrived. When the second police car came to a stop, approximately 10 feet away, Rowell looked out the side window and identified Fields. Officer Cavanaugh then arrested Fields and took him to the fifth district station.

¶ 14 The State read the jury a stipulation that Fields had "two qualifying felony convictions to be considered in connection with the AHC charge." Those convictions were for armed robbery and aggravated unlawful use of a weapon (AUUW).

¶ 15 Christine Fields, defendant's grandmother, testified that Fields lived with her and other family members at 12035 South Wentworth Avenue. Christine testified that she awakened at 6 a.m. on December 24, 2009, to prepare a Christmas feast. According to Christine, Fields took some food from the kitchen at approximately 6:30 a.m. and returned for milk between 10:30 to 11:00 a.m. Christine did not know whether Fields left the apartment at any other time that day.

¶ 16 Fields testified on his own behalf that he worked at Happy Food for five months before his arrest but he received his wages in cash and never filled out tax forms or deposited the wages into a bank account. Fields also testified that on the Christmas Eve in question, he spent the morning in his bedroom, except for a trip to the kitchen to get some pie. Fields stated he visited his nieces that afternoon and went to a mall with a friend that evening, returning home after 10 p.m. Fields further testified that he bought the Harvard jacket he was wearing at the time of his arrest because he grew up near 116th Street and Harvard Avenue. Fields added that he knew several people owned this style of jacket for this reason.

¶ 17 Fields did not work on the date of his arrest. Fields stated he was detained in the rear driver's side of a police car for 10 to 15 minutes. According to Fields, an officer opened the door and lifted Fields up. Fields stated his left foot was outside the car, while his right foot remained inside. Fields saw another police car in the middle of the block. Fields then saw an officer in the other car stick his thumb up, whereupon the police shoved Fields back into the car where he was held. Fields claimed that the police drove him to the police station without telling him why he was arrested.

¶ 18 Following closing arguments and jury instruction, the jury deliberated and found Fields guilty of armed robbery and being an AHC. On September 29, 2010, Fields filed a motion for a new trial, which the trial court denied on November 3, 2010. The trial court then proceeded to a sentencing hearing, imposing a 21-year sentence for armed robbery, which included a 15-year enhancement for the use of a firearm. The trial court also imposed a concurrent, 10-year sentence on the charge of being an AHC. The trial court entered the sentencing order on January 5, 2011. Fields filed his notice of appeal with this court the same day.

¶ 19 In *People v. Fields*, 2012 IL App (1st) 110311-U, filed December 28, 2012, Justice Steele authored an order vacating the 15-year enhanced portion of defendant's armed robbery sentences and affirming on the remaining issues defendant raised. Justice Steele retired shortly after filing that decision. The State then filed a timely petition for rehearing on January 11, 2013. Defendant filed an answer to the State's petition for rehearing on December 12, 2013,

and the State filed a reply on December 27, 2013. In separate orders filed contemporaneously, on February 11, 2014, we denied the State's petition for rehearing, withdrew the previous order filed in this case, and filed a modified opinion on denial of rehearing. *People v. Fields*, 2014 IL App (1st) 110311. On September 28, 2016, our supreme court ordered us to reconsider our judgment in light of *People v. McFadden*, 2016 IL 117424. The parties were allowed to file supplemental briefs with respect to *McFadden*'s impact on this case. We now vacate our previous judgment and enter this opinion in its stead.

¶ 20                                  ANALYSIS

¶ 21     On appeal, Fields argued (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of either charge, (2) the 15-year enhancement of his sentence for armed robbery is unconstitutional, and (3) he received ineffective assistance of counsel. We address his last claim first.

¶ 22                     I. Ineffective Assistance of Counsel

¶ 23     Fields argues he was denied effective assistance of counsel where his trial attorney failed to move for a severance of the charges against him. Generally, in order to show ineffective assistance of counsel, a defendant must establish (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's alleged deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We must show great deference to the attorney's decisions as there is a strong presumption that an attorney has acted adequately. *Id.* at 689. A defendant must overcome the strong presumption the challenged action or inaction "might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999) (and cases cited therein). Every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. To satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate a reasonable probability that the outcome of the trial would have been different or that the result of the proceeding was unreliable or fundamentally unfair. *Id.* at 687; *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Such a reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 24     Generally, a defense decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy. *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10. To overcome that general presumption, defendant relies heavily on *People v. Edwards*, 63 Ill. 2d 134 (1976). In *Edwards*, the Illinois Supreme Court held that the trial court abused its discretion in refusing to grant the defendant's motion to sever an unlawful use of weapons charge from an armed robbery charge. *Id.* at 140. Although the State generally has an interest in its pursuit of judicial economy in prosecuting all charges against one defendant in one trial, that interest was not so strong as to justify the denial of a severance in *Edwards*. *Id.* The *Edwards* court's holding was based on the fact that the weapons count created a strong probability that the defendant would be prejudiced in his defense of the armed robbery count since the weapons count required the State to prove a previous burglary conviction. *Id.* Thus, the supreme court upheld this court's reversal of the defendant's armed robbery conviction. *Id.* Following *Edwards*, this court has also rejected the argument that this type of prejudice can be cured by limiting instructions. *People v. Bracey*, 52 Ill. App. 3d 266, 274 (1977).

¶ 25 However, *Edwards* does not involve a claim of ineffective assistance of counsel. On the specific issue here, the State maintains this case is controlled by *People v. Gapski*, 283 Ill. App. 3d 937 (1996). In *Gapski*, the defendant was convicted of criminal sexual assault and unlawful possession of a weapon by a felon. *Id.* at 939. On appeal, Gapski claimed he received ineffective assistance of counsel in part because counsel failed to move to sever the charges, thereby allowing the jury considering the sexual assault count to hear that Gapski was convicted of burglary in 1977. *Id.* at 941.

¶ 26 The *Gapski* court ruled that trial counsel's failure to seek a severance could be viewed as a matter of trial strategy. *Id.* at 942. This court reasoned that counsel no doubt anticipated that the defendant would testify at trial and that his credibility could be impeached with another prior felony conviction from Wisconsin pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 515-16 (1971). "Thus, regardless of whether the two counts were severed, the jury would be aware that the defendant had a prior felony." *Gapski*, 283 Ill. App. 3d at 942. The *Gapski* court considered that counsel may have "felt that it made sense to try for an acquittal of both counts in one proceeding, thinking that the impact of the additional conviction would not be significant." *Id.* at 943. Furthermore, the *Gapski* court noted that the jury for the sexual assault count would hear all the evidence regarding the related weapons charge, regardless of whether the counts were severed, because the evidence regarding the weapons charge was related to the sexual assault count as an admission against the defendant's interest. *Id.*

¶ 27 The instant case is distinguishable from *Gapski*. Although the State asserts that the jury in a severed armed robbery case would have heard about the prior convictions as impeachment, the trial judge here had ruled *in limine* that Fields's 2005 conviction for unlawful use of a weapon and his 2006 conviction for armed robbery would be barred as impeachment. Indeed, the trial judge stated on the then-existing record that he could not envision a fair trial if the prior convictions were ruled admissible. The fact that defense counsel moved to bar admission of the prior convictions demonstrates an awareness of the prejudice Fields would suffer from a jury hearing about them in the armed robbery case. Additionally, the fact that the trial judge granted the motion shows that the trial judge recognized the convictions were sufficiently prejudicial to deny Fields a fair trial. The case law suggests the motion to sever would have been granted if counsel had made one. *Edwards*, 63 Ill. 2d at 140. The jury heard a stipulation to the mere fact of the prior qualifying convictions, but this does not eliminate the unfair prejudice to Fields, as the prior convictions at issue had no factual relationship to the armed robbery charge and a bare announcement unavoidably invites jury speculation about the nature of the prior crime. See *People v. Atkinson*, 186 Ill. 2d 450, 459 (1999).

¶ 28 Nevertheless, the basic premise of *Gapski* and *Poole* is that, when deciding whether to seek a severance, defense counsel may choose to pursue an "all or nothing" trial strategy, in which the defendant is acquitted or convicted of all charges in a single proceeding. Illinois case law endorses the "all-or-nothing" strategy in other situations, such as where the defense decides to forgo the fact finder's consideration of lesser included offenses. See, *e.g.*, *People v. Walton*, 378 Ill. App. 3d 580, 589 (2007) (and cases cited therein). The mere fact that an "all-or-nothing" strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance. *Id.* Moreover, in this case, while an "all or nothing" strategy required exposing the jury hearing the armed robbery charge to prejudicial information it would not have heard if the cases had been severed, the stipulation to the mere fact of the conviction mitigated the prejudice to defendant when compared to the specific

offenses heard by the jury in *Edwards*. See *People v. Walker*, 211 Ill. 2d 317, 338-39 (2004). Here, defense counsel may have believed that the odds of getting two acquittals were greater in one proceeding, rather than two proceedings. Accordingly, defendant has failed to overcome the strong presumption that defense counsel's action or inaction "might have been the product of sound trial strategy." *Evans*, 186 Ill. 2d at 93. Thus, we conclude that defendant did not receive ineffective assistance of counsel.

¶ 29                                  II. Sufficiency of the Evidence

¶ 30    Defendant claims the State failed to prove him guilty beyond a reasonable doubt of either charge. When the sufficiency of the evidence for a criminal conviction is in dispute, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is not an appellate court's function to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Furby*, 138 Ill. 2d 434, 455 (1990). For a reviewing court to set aside a criminal conviction due to insufficient evidence, the evidence submitted must be so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008).

¶ 31    Fields maintains that the evidence was insufficient to convict him of armed robbery where the conviction was based on identification testimony of a sole eyewitness. In Illinois, unless vague or doubtful, eyewitness identification of an accused, even that of a single eyewitness, will sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995) (citing *People v. Slim*, 127 Ill. 2d 302, 307 (1989)). The assessment of identification testimony is now customarily conducted by application of the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), and adopted in Illinois. See *Slim*, 127 Ill. 2d at 307. These factors are:

> "(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *Lewis*, 165 Ill. 2d at 356 (citing *Slim*, 127 Ill. 2d at 307-08).

¶ 32    We note that defendant's argument often refers to various studies on the reliability of eyewitness testimony, none of which appear to have been introduced at trial. On some of the *Biggers* factors, Fields also cites *People v. Allen*, 376 Ill. App. 3d 511, 524 (2007), which discussed proffered expert testimony, which is not at issue here.

¶ 33    In this case, viewing the evidence in the light most favorable to the State, the record shows that Rowell had the opportunity to observe Fields both before and during the robbery. The record also shows that Rowell paid attention to Fields's face, particularly after Fields told her to do so. The record further shows that Rowell's description of Fields was accurate, except for his height, which was accurate only relative to hers. This discrepancy is not fatal to the witness's identification. See *Slim*, 127 Ill. 2d at 308-09. The record shows that Rowell was certain of her identification immediately prior to the arrest. Regarding the length of time between the crime and the identification confrontation, the record indicates that over four

- 7 -

weeks elapsed. However, as the State notes, Illinois courts have upheld convictions involving much longer delays. See *People v. Holmes*, 141 Ill. 2d 204, 242 (1990) (and cases cited therein). Accordingly, the time difference does not invalidate the reliability of the identification.

¶ 34    Moreover, Fields also maintains the evidence was insufficient to convict him of either charge because the State failed to prove beyond a reasonable doubt that he was armed. The offenses of armed robbery and being an AHC both require proof that the defendant possessed a firearm. 720 ILCS 5/18-2(a)(2), 24-1.7(a) (West 2008).

¶ 35    Section 2-7.5 of the Criminal Code of 1961 states that "[e]xcept as otherwise provided in a specific [s]ection, 'firearm' has the meaning ascribed to it in [s]ection 1.1 of the Firearm Owners Identification Card Act." 720 ILCS 5/2-7.5 (West 2008). Section 1.1 of the Firearm Owners Identification Card Act (FOID Act) provides:

> " 'Firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however:
>
> (1) any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
>
> (2) any device used exclusively for signalling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;
>
> (3) any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition; and
>
> (4) an antique firearm (other than a machine-gun) which, although designed as a weapon, the Department of State Police finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." 430 ILCS 65/1.1 (West 2008).

¶ 36    While this statutory definition excludes some specific types of firearms, the term "firearm" is defined broadly, including "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." *Id.*; see also *People v. Toy*, 407 Ill. App. 3d 272, 287 (2011). Thus, contrary to Fields's assertion that the State must prove the gun is a firearm by direct or physical evidence, unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant is armed during a robbery. *People v. Lee*, 376 Ill. App. 3d 951, 955 (2007); *People v. Thomas*, 189 Ill. App. 3d 365, 371 (1989).

¶ 37    Fields argues this case is controlled by *People v. Ross*, 229 Ill. 2d 255 (2008). The *Ross* court held that the State had produced insufficient evidence of a "dangerous weapon" in an armed robbery case where the victim testified that the gun was small, portable, and concealable and a police officer testified that the gun was a .177-caliber pellet gun with a three-inch barrel. *Id.* at 276-77. However, the current version of the armed robbery statute deleted the requirement of proof of a "dangerous weapon" when the defendant is armed with a firearm. See 720 ILCS 5/18-2(a)(2) (West 2008); *Toy*, 407 Ill. App. 3d at 291. In this case, Rowell testified that Fields held a black gun at his side during the robbery. There is no evidence

suggesting the gun falls within the statutory exception to the general, broad definition of a firearm in the FOID Act, nor is this a case where the State destroyed the gun, precluding the defendant from mounting a defense. See *People v. Crowder*, 323 Ill. App. 3d 710, 712-13 (2001).

¶ 38 For the first time in his answer to the State's petition for rehearing, defendant argued that his AHC conviction was void in light of *People v. Aguilar*, 2013 IL 112116. In *Aguilar*, 2013 IL 112116, ¶ 22, our supreme court found the Class 4 version of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) to be unconstitutional in violation of the second amendment right to bear arms. When a statute is declared unconstitutional, it is void *ab initio*, or as though the law had never been passed. See *People v. Tellez-Valencia*, 188 Ill. 2d 523, 526 (1999).

¶ 39 Defendant maintained that because his prior conviction for the Class 4 form of AUUW under case No. 05 CR 17736 was void under *Aguilar*, the State could not rely on this now-void conviction as a predicate offense for AHC. Therefore, the State failed to prove an essential element of the offense of AHC.

¶ 40 A person commits the offense of AHC when "he or she receives, sells, possesses, or transfers any firearm after having been convicted" of two qualifying offenses. 720 ILCS 5/24-1.7 (West 2008). Count I of the indictment alleged that defendant committed the offense of AHC when defendant knowingly possessed a firearm after having been convicted of armed robbery in case number 06 CR 14139 and AUUW in case number 05 CR 17736. The parties stipulated to these prior convictions during trial. The prior convictions were elements of the offense of AHC that the State was required to prove. 720 ILCS 5/24-1.7(a) (West 2008); *People v. Davis*, 405 Ill. App. 3d 585, 597 (2010).

¶ 41 Our supreme court decided *People v. McFadden*, 2016 IL 117424, on June 16, 2016, which involved a direct appeal from a UUWF conviction for possessing a firearm after having a prior conviction for AUUW. McFadden argued that his UUWF conviction should be vacated because it was predicated on his prior AUUW conviction, which was entered under the section of the statute that was held facially unconstitutional in *Aguilar*, and thus, the State failed to prove all of the elements of the offense. *Id.* ¶ 13.

¶ 42 Reversing this court's decision in *People v. McFadden*, 2014 IL App (1st) 102939, which vacated defendant's UUWF conviction on the basis that the predicate offense of AUUW was void *ab initio*, our supreme court held that defendant's status as a felon was not affected by *Aguilar*. Our supreme court examined the language of the UUWF statute, which prohibits a person from knowingly possessing a firearm " 'if the person has been convicted of a felony under the laws of this State or any other jurisdiction.' " *McFadden*, 2016 IL 117424, ¶ 27 (quoting 720 ILCS 5/24-1.1(a) (West 2008)). The court explained "the language of the statute [(UUWF)] requires the State to prove only 'the defendant's felon status' " and does not require that the State prove the predicate offense at trial. *Id.* (quoting *People v. Walker*, 211 Ill. 2d 317, 337 (2004)); 720 ILCS 5/24-1.1(a) (West 2008). The court expressly found that "[n]othing on the face of the statute suggests any intent to limit the language to only those persons whose prior felony convictions are not later subject to vacatur" and further found that "the language of section 24-1.1(a) is 'consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated.' " *Id.* ¶¶ 27, 29 (quoting *Lewis v. United States*, 445 U.S. 55, 61 n.5 (1980)). Furthermore, the *McFadden* court found that because the purpose of the UUWF

statute is to protect the public from persons who are potentially dangerous and irresponsible, it is immaterial if the predicate conviction is subsequently found invalid for any reason. *Id.* Consequently, the court found that the UUWF statute is a "status offense" and that the legislature intended that a defendant must clear his felon status through the judicial process by having his prior felony conviction vacated or expunged prior to obtaining a firearm. *Id.* ¶¶ 29-30. The court explained:

> "It is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared. As with any conviction, a conviction is treated as valid until the judicial process has declared otherwise by direct appeal or collateral attack. Although *Aguilar* may provide a basis for vacating defendant's prior 2002 AUUW conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms." *Id.* ¶ 31.

¶ 43   The parties in this case filed supplemental briefs discussing *McFadden*'s impact on this case. Defendant now argues that *McFadden* is inapplicable to the AHC offense because *McFadden* limited its decision to the UUWF offense and, pursuant to *Lewis*, on which *McFadden* relied, we cannot apply *McFadden* to a recidivist offense such as AHC because an invalid prior conviction cannot be used to prove the felony element of a recidivist statute like AHC or to enhance punishment.

¶ 44   Since *McFadden*, this court decided *People v. Perkins*, 2016 IL App (1st) 150889, wherein we applied the *McFadden* analysis to an AHC conviction. Perkins was convicted as an AHC and filed a postconviction petition alleging the State failed to prove him guilty beyond a reasonable doubt because his AHC conviction was predicated on the AUUW statute found facially unconstitutional under *Aguilar* and therefore void *ab initio*. *Perkins*, 2016 IL App (1st) 150889, ¶ 2. The State appealed from the trial court's order granting postconviction relief. *Perkins*, 2016 IL App (1st) 150889, ¶ 3.

¶ 45   On appeal, the defendant argued that *McFadden*'s reasoning was limited to the offense of UUWF because "UUWF impose[d] a 'status-based disability' that precludes any convicted felon from possessing a firearm" whereas "the offense of [AHC] requires the State to prove that the defendant was convicted of specific enumerated offenses." *Id.* ¶ 6. He further argued that UUWF imposed a "status-based disability" whereas the AHC conviction "imposes a conduct-based disability *** based on a defendant's commission of specific acts" and therefore "because the *conduct* of which he was previously convicted—possession of a firearm—was constitutionally protected, it cannot serve as a predicate for his [AHC] conviction." (Emphasis in original.) *Id.*

¶ 46   The *Perkins* court rejected defendant's attempt to distinguish the UUWF offense from the AHC offense in this context as a "distinction without a difference." *Id.* ¶ 7. We explained:

> "In order to sustain its burden to prove that defendant is an [AHC], the State need only prove the fact of the prior convictions of enumerated offenses [citations], just as the State need only prove the fact of a prior felony conviction to support a UUWF conviction. Nothing in the [AHC] statute requires a court to examine a defendant's underlying conduct in commission of the enumerated offenses in order to find that the State has sustained its burden of proof. And because here, as in *McFadden*, Perkins'

- 10 -

prior convictions had not been vacated prior to his [AHC] conviction, they could properly serve as predicates for that conviction." *Id.*

¶ 47 We find that the reasoning employed in *Perkins* applies in the case at bar to defendant's attempt to distinguish the AHC statute in this case from the UUWF statute in *McFadden*. As a result of defendant's failure to vacate his prior AUUW conviction prior to the time he possessed a firearm in this case, the prior AUUW conviction could serve as the predicate offense for his AHC conviction. *Id.* ¶ 10. Accordingly, we reject defendant's argument.

¶ 48 We note that defendant has cited *Burgett v. Texas*, 389 U.S. 109 (1967), *United States v. Tucker*, 404 U.S. 443 (1972), and *United States v. Bryant*, 579 U.S. ___, 136 S. Ct. 1954 (2016), in support of the proposition that invalid convictions cannot be used in subsequent proceedings to prove the prior felony element of a recidivist statute or be relied upon to impose a longer sentence. Defendant's reliance on these cases is misplaced.

¶ 49 Recidivist statutes like the ones in *Bryant* and *Burgett*, or the imposition of a harsher sentence as in *Tucker*, depend on the reliability of those prior convictions. See *Lewis*, 445 U.S. at 67 ("Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with *Burgett* [or] *Tucker* ***."). The *Lewis* court explained that "gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Id*. *McFadden* acknowledged that *Lewis* dealt with a federal statute, but our supreme court found "no reason to treat the interpretation of section 24-1.1(a) [(UUWF)] differently than the Supreme Court's interpretation of the similar federal statute in *Lewis*." *McFadden*, 2016 IL 117424, ¶ 28. As the State was only required to prove the "status" of defendant's prior convictions to establish AHC and not their reliability, we reject defendant's argument.

¶ 50 III. The Armed Robbery Sentence

¶ 51 In his opening brief, defendant argued that the 15-year statutory enhancement of his armed robbery sentences under section 18-2(b) was unconstitutional. 720 ILCS 5/18-2(b) (West 2008). A constitutional challenge to a statute may be raised at any time and is subject to *de novo* review. *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 12. A statute bears a strong presumption that it is constitutional; defendant bears the burden of overcoming that presumption and clearly showing that the statute is unconstitutional. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005).

¶ 52 As defendant correctly noted, the 15-year firearm sentencing enhancement for armed robbery was declared unconstitutional in *People v. Hauschild*, 226 Ill. 2d 63, 86-87 (2007) (a 15-year sentence enhancement for armed robbery while armed with a firearm, imposed under the same armed robbery statute as in the instant case, violated the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because the penalty for that offense was "more severe than the penalty for the identical offense of armed violence predicated on robbery with a category I or category II weapon"). The State countered that the legislature subsequently passed a statutory amendment (Pub. Act 95-688, § 4 (eff. Oct. 23, 2007)) reviving the sentencing enhancement. The parties recognized a split in the districts as to whether the sentencing enhancement had been revived. The First and Fifth Districts ruled that Public Act 95-688 revived the 15-year enhancement in the armed robbery statute in *People v. Malone*, 2012 IL App (1st) 110517, ¶ 90, *People v. Brown*, 2012 IL App (5th) 100452,

¶¶ 15-16, and *People v. Williams*, 2012 IL App (1st) 100126, ¶ 55 (*dicta*). The Third and Fourth Districts held that the statutory amendment did not revive the sentencing enhancement, which was found to be unconstitutional and void *ab initio* under *Hauschild* in *People v. Blair*, 2012 IL App (3d) 100743-U, ¶ 5, *appeal allowed*, No. 114122 (Ill. May 30, 2012).

¶ 53 While the State's January 11, 2013, petition for rehearing directed at our original December 28, 2012, opinion was pending, our supreme court resolved the issue of whether Public Act 95-688 revived the 15-year sentencing enhancement in *People v. Blair*, 2013 IL 114122, ¶¶ 27-38. The *Blair* court held that because the proportionate penalties problem was eliminated by the enactment of Public Act 95-688, the offense of armed robbery while armed with a firearm was revived and therefore the use of the statutory enhanced sentencing range for that offense was not unconstitutional. In accordance with *Blair*, we hold that Public Act 95-688 effectively revived section 18-2(b) of the Code and, therefore, the 15-year sentence enhancement imposed in this case is constitutional. *Id.*; 720 ILCS 5/18-2(b) (West 2008).

¶ 54 CONCLUSION

¶ 55 We conclude that Fields did not receive ineffective assistance of counsel. We also conclude that the evidence against Fields was sufficient to convict him of armed robbery and AHC, and we affirm his conviction and sentence.

¶ 56 Affirmed.