NOTICE
Decision filed 05/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 231232-U

NO. 5-23-1232

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-144 |
| | ) | |
| JERMAINE JOHNSON, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice Cates and Justice Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defense counsel did not provide ineffective assistance by failing to request at trial a severance of the defendant's armed habitual criminal charge from his possession with intent to deliver a controlled substance charge.

¶ 2    After a jury trial, the defendant, Jermaine Johnson, was convicted of the offenses of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2018)) and possession with intent to deliver (720 ILCS 570/401(c)(2) (West 2018)). The defendant appeals the convictions, arguing that his trial counsel was ineffective where counsel failed to sever the charge of armed habitual criminal from the charge of possession with intent to deliver. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On February 3, 2020, the State charged the defendant with one count of AHC (720 ILCS 5/24-1.7(a) (West 2018)) and one count of possession with intent to deliver a controlled substance

1

weighing more than 1 gram and less than 15 grams (720 ILCS 570/401(c)(2) (West 2018)). The charges stemmed from an incident that occurred on February 1, 2020, where, while conducting a probable cause search during a traffic stop, police found two bags containing white powder on the defendant's person and a revolver inside the vehicle in which the defendant was a passenger.

¶ 5 The trial commenced on October 16, 2023, and concluded on October 18, 2023. The State tendered a proposed stipulation stating that the defendant had two prior unspecified qualifying offenses as to the AHC charge. The defendant requested that the stipulation be modified so that his two prior convictions of residential burglary would be disclosed to the jury. Defense counsel argued against the alteration, stating that he did not believe that the defendant would get a fair trial should the jury know that the defendant had been convicted of residential burglary. The trial judge advised the defendant that should the defendant decide to modify the stipulation, he would waive his right to argue on appeal that the stipulation was a trial mistake that would necessitate a new trial. The defendant indicated that he understood, and the altered stipulation was entered. Defense counsel requested that the record reflect that the altered stipulation was against the advice of counsel.

¶ 6 Defense counsel then explained that the defendant was not seeking to tender a jury instruction on the lesser included offense of simple possession. *Id.* § 402(c). The trial judge admonished the defendant regarding the purpose and strategy of seeking a lesser included charge. The defendant agreed to include the jury instruction regarding the lesser included offense.

¶ 7 Defense counsel then presented a motion *in limine* requesting that the defendant's prior offenses of residential burglary, previous juvenile charges, and prior bad acts, such as marijuana usage, be barred. The trial court granted the motion *in limine* as to the prior convictions older than 10 years but allowed evidence of the defendant's marijuana usage as it was related to the initial

2

traffic stop. The trial court also stated that it would allow the State to use the residential burglary convictions for impeachment purposes as the convictions would already be disclosed to the jury in the stipulation.

¶ 8        After opening statements, the trial judge then read the following stipulation to the jury: "In this case the parties stipulate that on February 1st, 2020, the defendant had previously been convicted of two separate offenses of residential burglary, which are qualifying offenses as defined by 720 ILCS 5/24-1.7."

¶ 9        The State first called State Trooper James Hobson to testify. At the time of the incident, Trooper Hobson was a patrol officer with the Champaign Police Department. Trooper Hobson testified that, on February 1, 2020, he had been dispatched to the area near the intersection of Centennial and Sangamon Drive in Champaign for a suspected drug deal. Upon arrival, he observed several people leave a house and enter a white Dodge Durango (Durango). Following the vehicle, he observed that it did not stop at a stop sign. Trooper Hobson initiated a traffic stop and followed the vehicle several blocks before it pulled over. Trooper Hobson testified that, while following the Durango, he smelled burnt cannabis through his open window. After the Durango pulled over, Trooper Hobson approached the driver and observed five individuals inside the vehicle. Trooper Hobson testified that he determined that he would need to search the vehicle and the five occupants and then called for additional units. Trooper Hobson, in court, then identified the defendant as one of the Durango's occupants and testified that the defendant had been sitting alone in the middle row of seats behind the driver.

¶ 10        Trooper Hobson further testified that, after additional units had arrived, the defendant was the second occupant searched. During the search, Sergeant Prosser alerted Trooper Hobson that there was a firearm in the vehicle. Trooper Hobson testified that he and Officer McCoy then

3

handcuffed the defendant and continued the search. Trooper Hobson found on the defendant two clear plastic bags containing a white powdery substance, which he believed to be cocaine. Trooper Hobson arrested the defendant. Trooper Hobson testified that Sergeant Prosser photographed the Durango and the firearm as it was found in the vehicle, in the middle row behind the front passenger seat. Trooper Hobson then swabbed the firearm in five locations to collect DNA evidence. Trooper Hobson also took buccal swabs of the five occupants, including the defendant, for DNA samples. The State then offered Trooper Hobson's photographs of the exterior and interior of the Durango into evidence. The photographs showed the revolver on the floor of the Durango behind the front passenger seat. Trooper Hobson testified that the front seats were powered seats and that, as far as he knew, a person in the front seats would not be able to pass a firearm underneath the seat.

¶ 11    The State then showed the jury a video of the arrest taken from Trooper Hobson's bodycam. The video showed the events as described by Trooper Hobson's testimony and showed Trooper Hobson removing several empty plastic bags, a large amount of cash, and two cell phones from the defendant's person. After the video was shown, Trooper Hobson identified the additional items found during the search and confirmed that, outside of the white powdery substances, he found no other drug paraphernalia on the defendant's person, such as tools to ingest, smoke, or inject drugs. Trooper Hobson testified that he had familiarity with drug crimes, having been involved with over 100 drug-related investigations. Trooper Hobson then testified that, in his experience, empty plastic bags were usually used to pack and sell smaller amounts of drugs, with drug dealers putting the drugs in the corner of the bag which was then tied and torn off to make a "corner baggie." Trooper Hobson also testified that drug dealers usually carried two cell phones, one for personal use and one to use as a burner phone for their drug dealing. He testified that drug dealers also

4

usually carried large amounts of cash on them, as drug deals were transacted in cash, which did not leave a trail, unlike credit cards. Trooper Hobson testified that cocaine was commonly sold in tenths of a gram, half grams, or a full gram. Trooper Hobson admitted that the dose size depended on the user's tolerance and drug use history, but doses could be as low as a tenth of a gram. Trooper Hobson also testified that drug dealers were usually armed for protection, as they carried large amounts of cash and did not go to the police when robbed. He added that drug dealers would also be armed to threaten people who owed them money for drugs.

¶ 12     On cross-examination, Trooper Hobson testified that he had been following the Durango before it committed a traffic violation. Trooper Hobson also testified that one of the other four occupants had a firearm owner's identification card. Defense counsel questioned Trooper Hobson about the lack of a visible source of DNA on the revolver, such as blood, bodily fluids, or hair. Trooper Hobson explained that he tested for touch DNA on the revolver by swabbing the revolver for skin cells. He further explained that standard procedures for collecting touch DNA from guns was to swab ridged or textured areas, as smooth areas were better for collecting latent fingerprints. Trooper Hobson also testified that he believed one of the bags of white powdery substance tested positive for cocaine.

¶ 13     On redirect examination, Trooper Hobson testified it would be unusual for a drug user to have empty bags, as they buy their drugs already divided, but drug dealers would have extra bags to package drugs for sale. Trooper Hobson testified that the 3.7 grams of cocaine that the defendant had on him could be used for 37 separate doses or more if it was combined with a cutting agent.

¶ 14     Sergeant Justin Prosser testified that he had been with the Champaign Police Department since September 2007. Sergeant Prosser testified that he was on duty the day of the incident and responded to the location in a supervisory capacity. When he arrived, there were other officers

5

already at the scene, including Trooper Hobson, and two of the car's occupants, including the defendant, had already been escorted from the vehicle. Sergeant Prosser went to the vehicle to assist and used his flashlight to look into the car from the passenger door on the driver's side. At that time, there was an occupant in the front passenger seat, two in the back, and no one in the middle row of seats. Sergeant Prosser testified that he saw a revolver in the middle row behind the passenger seat. Due to the gun's presence, he had the occupants put their hands in the air. Sergeant Prosser removed the remaining occupants from the vehicle and secured the scene until Trooper Hobson processed the firearm.

¶ 15    Sergeant Prosser was then shown the photographs of the Durango's interior that were previously entered into evidence and verified that the photos were accurate as to what he saw during the stop. Sergeant Prosser testified that Officer McCoy was also at the scene. Sergeant Prosser also testified that Officer McCoy was wearing a body-worn camera and that the video from the camera downloaded to the secure server at the City of Champaign. Sergeant Prosser verified the video from the body-worn camera Officer McCoy wore during the incident, and the video was entered into evidence. The video showed Officer McCoy's interview of the defendant immediately following the arrest. On the video, the defendant denied any knowledge of the firearm but admitted to having eaten raw marijuana prior to being pulled over.

¶ 16    The State then called Kristin Stiefvater, a drug chemist at the Illinois State Police (ISP) Springfield Laboratory. Stiefvater verified two evidence bags, each containing one of the white powders found on the defendant. Stiefvater then testified that she tested the white powders, and one of the powders tested negative while the other powder tested positive for cocaine. Stiefvater further testified that she then performed a mass spectrometry exam on the powder that tested positive, which confirmed the presence of cocaine on a molecular level. On cross-examination,

Stiefvater admitted that she did not know the purity of the cocaine found in the sample, only that cocaine was present.

¶ 17　The State's final witness was Sangeetha Srinivasan, a forensic scientist at the DNA section for the ISP. Srinivasan described her job as analyzing evidence for body fluids and examining and analyzing samples for DNA. Srinivasan testified that when she received a sample, she extracted the DNA from the cells and processed it to create a DNA profile. The profile was compared against base samples to determine if there was a match. Srinivasan then confirmed that she tested the buccal swabs taken from the defendant and the five swabs taken from the revolver. Srinivasan testified that the DNA profile from the sample taken from the grip of the revolver matched the DNA of the defendant. Srinivasan verified that the statistical frequency for the DNA profile from the sample to match a random person was 1 in 1.1 nonillion. She testified that the samples from the other four occupants were statistically excluded.

¶ 18　The State then rested its case. Defense counsel moved for a directed verdict, but the trial court denied the motion. The defendant declined to testify. During closing arguments, the State mentioned the defendant's prior residential burglaries when discussing the stipulation for the AHC charge. The rest of the closing argument focused on how the evidence showed the defendant was the owner of the gun and was carrying cocaine and a cutting agent. The State argued that the defendant had committed AHC due to possessing a gun while having multiple prior felony convictions. Further, the State argued that the defendant was a drug dealer as the gun, the amount of cocaine he was carrying, the cutting agent, cash, plastic bags, and multiple cell phones were indicative of possession with intent to deliver and not personal drug use. Defense counsel focused on the DNA evidence regarding the gun, arguing that the State had not proven beyond a reasonable doubt that the gun belonged to the defendant. Defense counsel also argued that as the gun's

7

ownership was unclear, and the amount of cocaine could be used for personal use, the State had not proven that the defendant was a drug dealer. The jury found the defendant guilty on both counts.

¶ 19    At the sentencing hearing on November 30, 2023, the trial court heard posttrial motions from the defendant and defense counsel. The defendant argued that he had received ineffective assistance of counsel due to a lack of communication with defense counsel and defense counsel's deficient performance at trial. After holding a preliminary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), the trial court denied the defendant's request for new counsel. Defense counsel moved for a new trial or a finding of not guilty notwithstanding the verdict. In support, defense counsel offered testimony from Aretha Johnson, the defendant's mother, who testified that she witnessed jurors discussing finding the defendant guilty before the trial began. As Aretha was unable to identify the jurors she overheard as being the jurors in the defendant's trial, the trial court dismissed her testimony. Defense counsel then argued that it was error to allow the defendant's prior convictions for residential burglary to be disclosed to the jury. Defense counsel argued that the jury was prejudiced against the defendant as residential burglary was "nightmarish" to people generally. Defense counsel admitted that the disclosure was by the defendant's request but further argued that it was a mistake for the trial court to allow the altered stipulation to be used. The trial court denied the motion, stating that the defendant insisted that the prior offenses be specifically named. The trial court then sentenced the defendant to 25 years in prison for the AHC charge and 5 years in prison for the possession with intent to deliver charge, to be served concurrently. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, the defendant argues that he received ineffective assistance of counsel due to defense counsel's failure to sever the AHC charge from the possession with intent to deliver charge. The State argues that defense counsel's decision not to sever the charges was valid trial strategy and that any prejudice was the result of the defendant's own actions.

¶ 22    To establish that counsel was ineffective, a defendant must show that (1) his attorney's performance was deficient and (2) the defendant suffered prejudice as a result. *People v. Hughes*, 2012 IL 112817, ¶ 44; see *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984). Counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Evans*, 2016 IL App (1st) 142190, ¶ 93. We review ineffective assistance claims *de novo*. *People v. Hilson*, 2023 IL 220047, ¶ 75.

¶ 23    To establish deficient performance of counsel, the defendant must overcome the strong presumption that defense counsel's actions were the product of sound trial strategy and not incompetence. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. Representation will not be considered ineffective based on mistakes in trial strategy or judgment alone as a defendant is entitled to "competent, not perfect, representation." *Id.* "In establishing the prejudice prong, the defendant must show that there is a reasonable probability that, but for his attorney's deficient performance, the result of the proceedings would have been different." *Id.* If we find that the defendant failed to satisfy the first prong of *Strickland*, we need not consider the second prong of whether the deficient performance resulted in prejudice. *People v. Torres*, 228 Ill. 2d 382, 395 (2008).

¶ 24    Generally, charges arising out of the same incident may be tried together (725 ILCS 5/114-7 (West 2018)), unless it appears that the defendant will be prejudiced thereby (*id.* § 114-8). The

9

trial court has broad discretion in its decision to grant or deny a motion to sever. *People v. Fleming*, 2014 IL App (1st) 113004, ¶ 38.

¶ 25    The defendant relies on *People v. Edwards*, 63 Ill. 2d 134 (1976), in support of his claim that the trial court would have granted a motion to sever had defense counsel filed the motion. The *Edwards* case was specific to whether the trial court erred in denying a severance; ineffective assistance of counsel was not at issue. *Id.* at 138.

¶ 26    The law recognizes that an attorney's performance will not be found deficient if it was based upon sound trial strategy. *Strickland*, 466 U.S. at 689. The defendant here argues that where the trial strategy is unsound, defense counsel's performance will be found deficient. See *People v. McMillin*, 352 Ill. App. 3d 336, 346-47 (2004). The trial strategy presumption is overcome "where no reasonably effective criminal defense attorney, confronting trial's circumstances, would engage in similar conduct." *Id.* at 344. "Generally, a defense decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy." *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10.

¶ 27    Here, the defendant alleges that defense counsel's performance was based upon an unsound strategy that no reasonably effective attorney would have pursued under the circumstances of the case. To prove the AHC charge, the State would have to prove that the defendant had been convicted of at least two previous qualifying offenses and was in possession of a firearm. 720 ILCS 5/24-1.7(a) (West 2018). To prove the charge of possession with intent to deliver a controlled substance, the State would have to prove that the defendant was in possession of a controlled substance for delivery or sale and not for personal use. 720 ILCS 570/401(c)(2) (West 2018). The defendant argues that, by not moving to sever the AHC charge from the possession with intent to deliver charge, defense counsel allowed prior crimes evidence to be introduced to the jury that

10

would have otherwise been inadmissible. The defendant further argues that allowing the other crimes evidence to be brought before the jury, defense counsel created a danger of undue prejudice against the defendant. Therefore, the defendant alleges that defense counsel's choice not to sever the charges cannot be considered sound trial strategy.

¶ 28    Illinois law recognizes that when deciding whether to seek a severance, trial counsel may choose an "all or nothing" trial strategy, where the defendant is acquitted or convicted of all charges in a single proceeding. *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 28. The mere fact that an "all or nothing" strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance. *Id.* A defendant may be disadvantaged by severing a case where an evidentiary deficiency in the first case could potentially be cured in the second case. *Poole*, 2012 IL App (4th) 101017, ¶ 10.

¶ 29    Defense counsel in this matter pursued an "all or nothing" strategy and chose not to pursue a severance of the charges. In support of this strategy, defense counsel attempted to stipulate that the defendant had previously been convicted of two felonies. By entering into this stipulation with the State, defense counsel wanted to avoid the jury learning about the exact nature of the defendant's underlying felony convictions. Thus, defense counsel's decision to stipulate would have minimized the high risk of prejudice in disclosing the defendant's prior convictions while, at the same time, pursuing the "all or nothing" strategy.

¶ 30    Further, if the charges here were severed, the State would have two chances to present the same evidence, allowing it to have "two bites at the apple." In such cases, Illinois courts have found it to be a valid trial strategy for defense counsel not to sever charges. *Id.* An all-or-nothing strategy may have limited value, but that value may be critical to a defendant in a difficult situation.

11

¶ 31    Moreover, defense counsel's original "all or nothing" strategy would not have required the introduction of unduly prejudicial evidence against the defendant. Illinois courts have previously found that in trials where AHC or unlawful possession of a weapon by a felon charges are joined to non-weapon charges, the prejudicial effect of prior convictions can be mitigated by the use of stipulations or motions *in limine*. *Fields*, 2017 IL App (1st) 110311-B, ¶ 28. The record here gives further reason to find defense counsel's actions support a valid trial strategy, in that a pretrial motion was filed to bar admission of prior convictions for impeachment purposes, and a stipulation to unspecified prior qualifying convictions was sought.

¶ 32    The defendant, however, argues that the jury was specifically informed of his convictions for residential burglary. We agree with the State that the introduction of the prejudicial information was due to invited error. The doctrine of invited error precludes a defendant who actively procures, invites, or acquiesces in the admission of evidence from complaining on appeal that he was prejudiced by the same evidence, even if the admission of the evidence was improper. *People v. Carter*, 208 Ill. 2d 309, 319-20 (2003). Allowing the defendant to request the trial court to proceed in a certain manner and then attack the very procedure he requested in his appeal "would offend all notions of fair play." *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001). Even the defendant here acknowledges that the exact convictions were added to the stipulation at his own request. If not for the defendant's decision to have specific convictions read to the jury, the stipulation would have mitigated the prejudicial effect of the prior convictions. As the trial judge admonished the defendant when he made this decision, the defendant "[gave] up any right to claim that that's a trial mistake."

¶ 33    Accordingly, the defendant has failed to overcome the strong presumption that defense counsel's decision to not pursue a motion to sever was a matter of sound trial strategy. We conclude

12

that the defendant did not receive ineffective assistance of counsel where counsel's performance was not deficient, and thus we need not consider whether defendant was prejudiced. Therefore, the defendant's claim of ineffective assistance of counsel fails.

¶ 34                                    III. CONCLUSION

¶ 35    For the foregoing reasons, we conclude that the defendant did not receive ineffective assistance of counsel and affirm his conviction and sentence.


¶ 36    Affirmed.