THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD SCOTT GAPSKI, Defendant-Appellant.

Second District  No. 2—94—0808

Opinion filed September 25, 1996.

938

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

A jury convicted the defendant, Ronald Scott Gapski, of one count of criminal sexual assault and one count of unlawful possession of a weapon by a felon. The trial court sentenced the defendant to concurrent terms of imprisonment of 30 years for criminal sexual assault and 10 years for unlawful possession of a weapon by a felon. The defendant appeals.

The 16-year-old victim, A.D., testified at the defendant's trial that she, along with several other of her siblings or half-siblings, 18-year-old J.D., 14-year-old J.G., 14-year-old C.D., and 10-year-old C.G., went to the defendant's house to spend the night on October 1, 1993. The defendant is her biological father. Upon arriving at the house, the defendant convinced A.D. to drink several cans of beer and a couple of shots of vodka. At that time, C.G. was present and she also drank some beer. A.D. eventually became sick and had to use the bathroom. As she sat on the toilet, the defendant came in and A.D. ordered him to get out. Thereafter, A.D. lay down on a bed in a first-floor bedroom and fell asleep. During the middle of the night, she was awakened when a man came into her bedroom and pulled her pants and underpants down and inserted his penis into her vagina. Because she was sick, scared, and having trouble breathing, she did not move. When the man finished, he zipped his pants and buckled his belt.

Seconds after the man got off of her, a light was turned on in the room and the defendant was standing at the door. The defendant twice asked A.D. if she was alright; when she did not respond, he left the room.

A.D. further testified about an incident between her and the defendant which occurred a few years prior to the October 1, 1993, incident. She stated that the defendant had placed his hand around her vaginal area. She rolled over to avoid him and did not tell anyone of the incident because she was scared.

C.D. testified that everyone was drinking beer on the night in question. He noted that A.D. became sick and went to the bathroom, whereupon the defendant followed her and was eventually ordered to leave. C.D. noted that during the night he passed the bedroom A.D. was sleeping in and he heard the defendant moaning. He noted that he had heard the defendant moan before when alone in his bedroom with his wife. C.D. further testified that several weeks later the defendant's household received a call from the Department of Children and Family Services (DCFS). Shortly after the call, the defendant went to the garage to retrieve some bullets, loaded his gun, and stated that J.D. called the DCFS and he was going to shoot him.

J.D. testified that everyone was drinking on the night in question. He noted that the defendant provided beer and poured shots. He recalled that A.D. went to the bathroom and the defendant followed her in and then was ordered to get out. J.D. further testified that on November 1, 1993, he drank beer at the defendant's house and had a conversation with him. At that time, the defendant admitted that he had sexually assaulted A.D.

C.G. testified that she did not drink any beer on the night of October 1, 1993. She noted that the defendant and A.D. drank beer. She stated that A.D. became sick and during the night she began screaming that she was fat and ugly and hated her mother. At that point, the defendant attempted to calm A.D. That night C.G. slept in the living room on the love seat, and the defendant slept nearby on the couch. Around 6 a.m., she noticed that A.D. walked upstairs.

J.G. testified that during the evening of October 1, 1993, she saw A.D. take a beer from the refrigerator. She also testified that she only saw the defendant with beer. She stated that at some point A.D. screamed that she was fat and ugly. Around 1 or 2 a.m., she heard A.D. scream again and noted that the defendant and J.D. went into the bedroom. When A.D. fell asleep, J.D. and the defendant left the bedroom. The defendant and C.G. then went to sleep in the living room. J.G. then went upstairs to watch television with C.D. About 10 minutes later, J.D. came upstairs and she, J.D. and C.D. slept upstairs. Around 6 a.m., A.D. also came upstairs to sleep.

The 34-year-old defendant testified that on the evening of October 1, 1993, he drank beer in his garage but did not see A.D. or C.G. drink any as they conversed. Later, the defendant left the house and bought a quart of beer, which he drank as he drove around. When he returned to the house, he saw A.D. drinking a beer. He told her that he did not want her drinking, but since it was almost empty, he let her finish it. Later, the defendant opened a bottle of vodka and poured a shot for himself. According to the defendant, A.D. grabbed the shot and drank it. He then told her not to do it again. He proceeded to pour another shot and A.D. drank that one also. After that, A.D. did not drink anymore alcohol, but she began to act drunk about 20 minutes later. A.D. eventually became sick, and, when she began to lie down in the bathroom, he and J.D. carried her into the first-floor bedroom. C.G. and C.D. were also there. At that point, A.D. started screaming about her mother. The defendant attempted to comfort her. He noted that he was never in the bedroom alone with A.D. When A.D. finally fell asleep, he went to the living room and slept on the couch next to C.G.

The defendant further testified that around 3 a.m., he awoke and C.G. told him to tell A.D. to be quiet so she could sleep. He then went to the bedroom where A.D. had been sleeping. The room was gutted for remodeling and open to view. He flipped the light switch on and opened the door. At that point, he saw A.D. banging on the wall. He asked her what her problem was, and she replied that she did not know. He told her to be quiet, turned off the light, and then returned to the couch. He denied that he had removed A.D.'s clothes or had had sexual intercourse with her. He next saw A.D. when she came down the stairs and asked to use the shower.

On appeal, the defendant first contends that he was denied the effective assistance of counsel. Specifically, he contends that his trial counsel was ineffective in: (1) failing to move to sever the count of unlawful possession of a weapon by a felon from the count of criminal sexual assault, thereby allowing the jury considering the sexual assault count to hear of the defendant's 1977 burglary conviction; (2) failing to seek to bar evidence of the defendant's 1986 Wisconsin conviction of second degree sexual assault; (3) failing to object to A.D.'s testimony that the defendant had sexually assaulted her on a prior occasion; (4) erroneously informing prospective jurors during *voir dire* that the defendant had been to prison; (5) failing to object to the prosecutor's questioning during *voir dire*; and (6) failing to introduce certain evidence in support of the defendant's story of the events that took place on the night of the assault.

■ To prevail on a claim of ineffective assistance of counsel, the

defendant must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984), citing *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984). The effectiveness of counsel is determined by considering the totality of his conduct, not isolated incidents, and inquiry may not be extended into areas involving the exercise of judgment, discretion, trial tactics, or strategy. *People v. Spicer*, 158 Ill. App. 3d 699, 704 (1987). There is a strong presumption that the challenged actions of counsel were the product of sound trial strategy and competence. *People v. Barrow*, 133 Ill. 2d 226, 247 (1989).

■ Turning to the defendant's claim that his trial counsel was ineffective in failing to sever the weapons charge, we note that section 111—4(a) of the Code of Criminal Procedure of 1963 provides that two or more offenses may be charged in the same information in a separate count for each offense if the offenses charged are based on the same act or two or more acts if they are based on the same comprehensive transaction. 725 ILCS 5/111—4(a) (West 1994). There are no precise criteria for determining whether separate offenses are part of the same comprehensive transaction (*People v. Trail*, 197 Ill. App. 3d 742, 746 (1990)), and the decision to sever charges rests largely within the discretion of the trial court (*People v. Coulter*, 230 Ill. App. 3d 209, 216 (1992)). However, some important factors to consider in connection with a severance motion are the proximity in time and location of the offenses, the identity of evidence needed to demonstrate a link between the offenses, whether there was a common method in the offenses, and whether the same or similar evidence would establish the elements of the offenses. *People v. Duncan*, 115 Ill. 2d 429, 441 (1987). Generally, it is the defense that must move for a severance and its decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy. *People v. Turner*, 36 Ill. App. 3d 77, 81 (1976).

■ Applying the above-mentioned principles, we find that the trial counsel's failure to seek a severance could be viewed as a matter of trial strategy. Defense counsel no doubt anticipated that the defendant would testify at trial and that his credibility could be impeached with his prior felony from the State of Wisconsin pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 515-16 (1971). Thus, regardless of whether the two counts were severed, the jury would be aware that the defendant had a prior felony. It was only the 1977 burglary conviction which would have been inadmissible under

*Montgomery* had the two counts been severed. Perhaps trial counsel felt that it made sense to try for an acquittal of both counts in one proceeding, thinking that the impact of the additional conviction would not be significant. Furthermore, the jury for the sexual assault count would hear all the evidence regarding the related weapons charge whether or not the counts were severed because the evidence regarding the weapons charge was related to the sexual assault count as an admission against the defendant's interest. Under the circumstances, the defendant's claim that his counsel was ineffective regarding this matter must fail.

*People v. Edwards*, 63 Ill. 2d 134 (1976), cited by the defendant in support of his position, is not on point. There, the supreme court held that the trial court erred in refusing to grant the defendant's motion to sever an unlawful use of weapons charge from an armed robbery charge. The court's holding was based on the fact that the weapons count created a strong probability that the defendant would be prejudiced in his defense of the armed robbery count since the weapons count required the State to prove a previous burglary conviction. Unlike *Edwards*, this defendant had at least one felony conviction that would be heard by the jury even if the counts were severed. Furthermore, in *Edwards*, the defendant had sought a motion for severance. In contrast, the instant defendant did not seek a severance in the trial court. Thus, defense counsel's decision not to seek a severance can be viewed as a matter of trial strategy.

*People v. Lewis*, 240 Ill. App. 3d 463 (1992), and *People v. Karraker*, 261 Ill. App. 3d 942 (1994), also cited by the defendant, do not require a different result. In *Lewis*, defense counsel was found to be ineffective in failing to sever two murder charges. The murders occurred two days apart and the defendant raised markedly different theories in defense of the two charges. The court noted the profound impact the cumulative evidence regarding the two murders would have on the jury. In *Karraker*, defense counsel was found ineffective for failing to sever counts of theft, unlawful use of a weapon, and unlawful possession of a weapon by a felon. There, the defendant raised an entrapment defense to one of the counts, which necessarily requires that the defendant admit to having committed the offense. Under those circumstances, the court found it incomprehensible that counsel would not recognize the prejudicial impact such an admission would have on the other charges.

The present case is distinguishable from *Lewis* and *Karraker*. Unlike *Lewis*, even if the present charges were severed, the evidence of the weapons offense would have been admissible on the sexual assault count since the defendant's threat to kill J.D. and the posses-

sion of the gun were intricately related to the sexual assault count and constituted an admission against interest. *Karraker* is also distinguishable because there the defense raised to one of the counts required that the defendant admit that he committed the offense. In the present case, the defendant denied both charges and it could be seen as a matter of strategy to have both counts tried in a single proceeding.

We next turn to the defendant's claim that his counsel was ineffective for failing to exclude mention of his 1986 felony conviction in the State of Wisconsin.

■ In *Montgomery*, the Illinois Supreme Court held that evidence of a prior conviction is admissible for the purpose of attacking the witness' credibility if the crime (1) was punishable by death or imprisonment in excess of one year; or (2) involved dishonesty or false statement regardless of the punishment. In either case, however, the evidence is not admissible if the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516. Recently, in *People v. Williams*, 173 Ill. 2d 48 (1996), the supreme court restated its adherence to the three-part test set forth in *Montgomery*.

■ Here, the jury did not hear about the nature of the defendant's 1986 felony conviction from the State of Wisconsin. Instead, the jury was simply told that the defendant had committed a prior felony. Under the circumstances, we find that the probative value of impeaching the defendant's credibility outweighed any prejudice to the defendant. Since any motion made by defense counsel to exclude such evidence would have been unsuccessful, we find that counsel was not ineffective for failing to make such a motion.

■ Regarding the defendant's claim that his counsel was ineffective for failing to object to a prior incident involving the victim, we note that, when prosecuting a sex-related offense upon a child, evidence of prior sexual acts between the defendant and the victim is admissible to show the familiar relationship between the parties and to corroborate the victim's testimony as to the act relied upon for conviction. *People v. Puhl*, 211 Ill. App. 3d 457, 474 (1991). We find no merit to the defendant's contention that this rule is inapplicable because the victim had turned 16 at the time of the offense. Accordingly, defense counsel was not ineffective for failing to make an objection to the testimony.

■ With respect to defendant's claim that during *voir dire* defense counsel improperly informed the jury that he had been in prison, we find that the defendant's claim is belied by the record. The record shows that counsel in essence merely asked prospective jurors if it

would make a difference to them if they knew the defendant had been in prison. This is more along the lines of a hypothetical question and can be viewed as a matter of trial strategy, *i.e.*, counsel was attempting to find a jury sympathetic to the defendant's plight.

Turning to the remainder of the defendant's claims that his counsel was ineffective, we note that the claims are either matters within the purview of counsel's judgment and trial strategy or are minor errors which we find to be harmless in light of the overwhelming evidence of the defendant's guilt.

Next, the defendant contends that the trial court erred in sentencing him as a Class X offender pursuant to section 12—13(b) of the Criminal Code of 1961 (the Code) (720 ILCS 5/12—13(b) (West 1994)).

■ The State initially contends that the defendant waived the argument by failing to attend his sentencing hearing and by failing to object to the error or raise the issue in a motion to reconsider the sentence. Here, we note that the finding that the defendant was eligible for an enhanced sentence enabled the court to impose a sentence twice that of the normal maximum sentence. Accordingly, we elect to address the issue as plain error. See *People v. Lindsay*, 247 Ill. App. 3d 518, 527 (1993).

Section 12—13(b) of the Code provides in relevant part:

> "Criminal sexual assault is a Class 1 felony. A second or subsequent conviction for a violation of this Section or under any similar statute of this State or any other state for any offense involving criminal sexual assault that is substantially equivalent to or more serious than the sexual assault prohibited under this Section is a Class X felony." 720 ILCS 5/12—13(b) (West 1994).

■ Here, the defendant's prior conviction from the State of Wisconsin was for second degree sexual assault (Wis. Stat. Ann. § 940.225(2)(e) (West 1982)). That section provides that a person commits the offense when he "[h]as sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 18 years without the consent of that person." Wis. Stat. Ann. § 940.225(2)(e) (West 1982). "Sexual intercourse" is defined as "the meaning assigned under § 939.22(36) as well as cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another." Wis. Stat. Ann. § 940.225(5)(b) (West 1982). The facts of the Wisconsin case involved the defendant placing his finger and tongue in the vagina of a 12-year-old girl. Although the victim was only 12 years old, the crime was charged as if she were between 13 and 18 years old. In Illinois, the corresponding charge for such conduct would

be aggravated criminal sexual abuse, which provides that the accused commits the offense if he commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least five years older than the victim. 720 ILCS 5/12—16(d) (West 1994). That offense is a Class 2 felony while the present offense, criminal sexual assault, is a Class 1 felony. Since the Wisconsin offense would have been Class 2 felony in Illinois, we find that it was not substantially equivalent to or more serious than the instant criminal sexual assault offense. Accordingly, the defendant's sentence was erroneously enhanced to a Class X felony for sentencing purposes. Thus, the cause must be remanded for a new sentencing hearing.

The defendant next argues that the trial court erred in not making a finding that the Wisconsin conviction, which served as the basis to impose an extended-term sentence on the weapons conviction, was a similar or greater class felony than the weapons charge. We find, however, that the defendant's argument is without merit since we have previously determined that the Wisconsin conviction would be a Class 2 felony in the State of Illinois, which is a greater class felony than the Class 3 weapons charge. Accordingly, the trial court could properly use the Wisconsin conviction as a basis for enhancing the defendant's weapon conviction.

Lastly, the defendant argues that the trial court impermissibly used his 1986 Wisconsin conviction as an aggravating factor to impose maximum sentences on the two counts where that same conviction had already been used to enhance the status of the offenses.

Here, we have already determined that the cause must be remanded for resentencing of the criminal sexual assault count as a Class 1 felony rather than a Class X felony. Accordingly, the argument presented on this point is moot. On remand the Wisconsin conviction could properly be considered as an aggravating factor to impose a greater-than-minimum sentence on the criminal sexual assault conviction. We also note that on remand the trial court may consider the Wisconsin conviction as an aggravating factor in relation to the weapons charge, since our supreme court has held it can be used to impose an extended-term sentence on the weapons charge and then reconsidered as part of the defendant's entire criminal history. See *People v. Thomas*, 171 Ill. 2d 207, 223-29 (1996).

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed in part and reversed in part, and the cause is

remanded for a new sentencing hearing consistent with the views expressed in this opinion.

Affirmed in part and reversed in part; cause remanded.

INGLIS and BOWMAN, JJ., concur.