**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200453-U

Order filed September 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal Nos. 3-20-0453 and 3-20-0454 |
| v. | ) ) ) | Circuit Nos. 19-CF-167 and 19-CF-279 |
| MATTHEW W. BRIMBERRY, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Daugherity and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The circuit court committed harmless error in *sua sponte* joining defendant's separate residential burglary charges. (2) The circuit court abused its discretion in barring defendant's witnesses from testifying.

¶ 2    Defendant, Matthew W. Brimberry, appeals his three convictions for residential burglary. Defendant argues that: (1) the Peoria County circuit court abused its discretion when it *sua sponte* joined multiple residential burglary charges that were not part of the same transaction;

(2) the court abused its discretion when it barred defendant's witnesses from testifying; and (3) his sentence is excessive. We reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4         In case No. 19-CF-167, defendant was charged by indictment with one count of residential burglary (720 ILCS 5/19-3(a) (West 2018)). The indictment alleged that on or about March 19, 2019, defendant knowingly and without authority entered the home of Carli Light located in Peoria, Illinois, with the intent to commit a theft therein. In case No. 19-CF-279, defendant was charged by indictment with two counts of residential burglary (*id.*). The indictment alleged that on or about March 19, 2019, defendant knowingly and without authority entered the homes of Scott Maurer and Nayelly Zufa in Peoria Heights, Illinois, with the intent to commit a theft therein. Prior to trial, the State filed a motion *in limine* in case No. 19-CF-167 to admit other-crimes evidence. The State sought to admit evidence establishing the offenses charged in case No. 19-CF-279. Defense counsel objected and argued:

> "We believe that they're just trying to show that—especially if we're taking one case at a time, and that would be our preference. And actually, the second case is really two cases. We would potentially be moving to make those separate trials, that these are all individual cases that—and that nothing was taken from any of the—in any of these instances, which we would argue that's a factor in the determination of whether or not there was intent to commit a theft on any of these occasions."

During the hearing, the circuit court *sua sponte* joined defendant's three charges "[i]n the interest of judicial economy." Additionally, the court granted the State's motion.

2

¶ 5    In an answer to the State's discovery request, defendant disclosed that he intended to call the following witnesses at trial:

"A. Himself

B. Liz Brimberry, 201 Sunnyridge Ct., Apt. A, Pekin, Illinois, 61604, The Defense believes that she would testify that she would take the Defendant to go pass out flyers and also work with him.

C. Linda Gifford, 316 Birkett, S. Pekin, IL. The Defense believes that she would testify that she has knowledge of the Defendant passing out flyers and that he did work for her.

D. Aileen Conley, 907 Bacon St., Pekin, IL. The Defense believes that she would testify that she received a flyer from the Defendant and hired him to work for her because of the flyer.

E. Dona Fuller, 208 Sycamore, Pekin, IL. The Defense believes she would testify that she helped the Defendant make flyers. She would also testify that he worked for her at the church and was a very hard worker.

F. Rich and Carol Root, 3502 Cattail Cove, Pekin, IL. The Defense believes that they would testify that the Defendant worked for them."

The State filed a subsequent motion *in limine* to bar defendant's proposed witnesses from testifying that on prior occasions the witnesses had hired defendant to do yard work after receiving flyers that defendant had distributed.

¶ 6    At the hearing on the State's motion, the State argued the proposed testimony was irrelevant and improper character evidence. Defense counsel responded that while he did not disagree with how the State characterized the anticipated nature of the testimony of these

3

witnesses, counsel believed the testimony would be relevant to defendant's intent. The State replied:

> "In addition, a lot of these incidents are remote in time. I've spoken to a number of the witnesses. They don't know the defendant very well. They've met him, if anything, 3 or 4 times in their life, at most. They're months old. I think one witness said she hired him this year, but prior to that, these—these all happened months ago, also in Pekin. There's not a single witness who's going to say he did anything in Peoria. And so I just don't believe that there's enough here to turn this from just a distraction for the jury, and is improper character evidence."

Defense counsel answered:

> "Yes. I mean he's been locked up for, I think, the last 5 months on this case. He was previously living in Pekin, and that's where he was doing his door-to-door. And then, I believe, tried to expand his business and started coming over to Peoria County. And so, yes, they're not—they didn't happen near today. They were—they were months ago."

The court stated:

> "If a person worked at a bank and took $100.00 every Thursday for 8 consecutive Thursdays, and then was caught 6 months later—they just took the $800.00, but 6 months later they were caught, I don't think that it's a defensible approach to say, 'Let me tell you about all those other Thursdays I worked there that I didn't take any money.'
>
> I think the State has the burden of proving elements of the offenses here, and I don't see the nexus or the intertwining of the—of the proffer that the

4

defense makes. So unless there's something more that I'm missing, testimony that relates to a different county, and a different city, and different days, different weeks, different months, different people, different neighborhoods, those would be excluded and not be considered relevant. Okay."

The court then granted the State's motion.

¶ 7        At the jury trial, Light testified that she was asleep in her bedroom when she heard defendant knock at her door and her dog began to bark. Defendant knocked for a short time and stood at the door for approximately a minute to a minute and a half. Light then heard the door creak open. She grabbed a flashlight and tried to scare defendant by opening her bedroom door as loudly as possible. She saw defendant standing in her front room. Light believed defendant was about three to five feet into her home. Defendant was still holding the doorknob. Light pushed the door and started screaming, "No."

¶ 8        Light continued to push the door, and defendant took a step back. She could not understand what defendant was saying because he was stuttering. Defendant appeared flustered and did not know that Light was in the house. Defendant said he thought Light had said to come in. Light noticed several pieces of blank paper in defendant's hand. Defendant asked her if she wanted lawn care. Throughout the interaction, Light screamed "No." After Light closed the door, defendant walked quickly across the street. Light never gave defendant permission to enter her home.

¶ 9        Maurer testified that he was in his basement when he heard his backdoor open. He then heard the backdoor close and his dogs started to bark. Maurer thought it was his stepdaughter, so he waited for her to come downstairs. Then he heard knocking at the backdoor. Maurer went upstairs and saw defendant standing at his backdoor. He opened the door and asked defendant

what he wanted. Defendant stated he just finished doing yard work across the street and asked Maurer if he needed any yard work done. Maurer said no, and defendant walked away.

¶ 10    Maurer was certain that he had heard his backdoor open, so he checked the security camera in the driveway. The camera footage showed defendant opening the backdoor and walking into the house before knocking. Maurer did not give defendant permission to enter his home, and he called the police.

¶ 11    Zufa testified that she was sitting in her living room when she noticed defendant standing inside the sunroom in the rear of her house. Defendant was trying to get her attention while also trying to open the sliding glass door into her kitchen. Zufa told defendant to go around to the front door. Once at the front door, defendant informed Zufa that he had a lawn care service and gave her a flyer. Defendant stated that he usually does not get people's attention knocking on the front door, so he will go to their backdoor. Defendant left when Zufa said she did not need him to complete any yard work.

¶ 12    The jury found defendant guilty of all three counts of residential burglary. Defendant filed a motion for a new trial arguing, in part, that the court erred by joining defendant's charges and barring defense witnesses from testifying. The court denied defendant's motion.

¶ 13    Prior to sentencing, a presentence investigation report (PSI) was prepared. According to the PSI, defendant had previously been convicted of 6 felonies (including burglary and residential burglary, both Class 1 felonies) and 12 misdemeanors. Notably, defendant was on mandatory supervised release for a prior residential burglary conviction at the time he committed the instant offenses. The PSI also included Maurer's victim statement wherein he said "Despite having 3 large dogs we don't feel safe. There is a feeling that someone will walk in our house uninvited at any time. As a result our doors are locked even when everyone is home. Any time

6

the dogs bark we check the video camera." Additionally, Maurer reported that he and his family felt a "fear of being alone," "anxiety," "anger," and "paranoia" as a result of defendant's crime.

¶ 14        At the sentencing hearing, the State did not present any formal evidence in aggravation. In mitigation, defense counsel called Rich Root and Deana Fuller. Root testified that he lived in Pekin, Illinois. He met defendant in fall 2018 after defendant left a flyer on his door advertising lawn clean up. Root hired defendant to clear his yard of leaves. On cross-examination, Root stated his relationship with defendant covered three days.

¶ 15        Fuller testified that she was an associate pastor in Pekin, Illinois. She met defendant at the end of summer/beginning of fall 2018 through church. Defendant had "handmade" flyers with him. Fuller helped defendant make professional looking flyers. Fuller hired defendant to help her brother who was working on a roof. Fuller hired defendant for additional work and helped him get hired by other church members. Fuller considered defendant to be a very hard worker. On cross-examination, Fuller testified that she lost contact with defendant in winter 2018.

¶ 16        The State argued for a sentence close to the maximum. Defense counsel argued for a six-year sentence. Defendant made a statement in allocution wherein he maintained his innocence. The court stated:

> "You don't understand the dos and the don'ts [*sic*]. Well, let me put it on the record. People who are inside of their homes don't have other people including the police barge inside, come inside, turn the door knob, and go inside without authorization.

7

There's one little postage stamp-sized place on the planet that people still get to call their own and not have other people come in whenever they want to, and it's their home."

Additionally, the court noted that defendant's statement showed that he was in denial of his own behavior. The court sentenced defendant to 24 years' imprisonment. Defendant filed a motion to reconsider sentence which the court denied. Defendant appealed.

¶ 17                                II. ANALYSIS

¶ 18                                A. Joinder

¶ 19        Defendant argues that the court abused its discretion when it *sua sponte* joined defendant's multiple residential burglary charges where the separate offenses were not part of the same comprehensive transaction.

¶ 20        A circuit court's decision on whether to sever or join charges will not be overturned absent an abuse of discretion. *People v. Walston*, 386 Ill. App. 3d 598, 600-01 (2008). A circuit court may join two or more offenses into a single charge if they are based on the same comprehensive transaction unless joinder would prejudice the defendant. See *id.* Some factors for determining whether multiple acts are parts of the same comprehensive transaction include: "(1) 'the proximity in time and location of the offenses,' (2) 'the identity of evidence needed to demonstrate a link between the offenses,' (3) 'whether there was a common method in the offenses,' and (4) 'whether the same or similar evidence would establish the elements of the offenses.' " *People v. Hayden*, 2018 IL App (4th) 160035, ¶ 96 (quoting *People v. Gapski*, 283 Ill. App. 3d 937, 942 (1996)).

¶ 21        However, courts must not allow the factors to supplant the statutory language. *Id.* Further, "[e]ven where a [circuit] court improperly joins charges against a defendant, the error

8

will be deemed harmless where the evidence of all of the charged crimes would have been admissible in the separate trials that would have taken place if not for the misjoinder." *Walston*, 386 Ill. App. 3d at 609.

¶ 22 Here, it is clear from the record that the circuit court erred in *sua sponte* joining defendant's three charges "[i]n the interest of judicial economy." Judicial economy is not a relevant factor in determining whether the offenses are based on the same comprehensive transaction. However, it is also clear from the record that the court granted the State's motion *in limine* to allow other-crimes evidence. Accordingly, since evidence of all the charged crimes would have been admissible in the separate trials, the court's error was harmless. See *id.*

¶ 23 B. Meaningful Opportunity to Present a Complete Defense

¶ 24 Defendant also argues that the circuit court abused its discretion when it barred him from presenting prior employment evidence by calling witnesses to testify that they previously hired him to perform lawn care work after receiving his flyers where the proposed evidence was relevant and admissible.

¶ 25 "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *** or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).

¶ 26 "It is within the trial court's discretion to decide whether evidence is relevant and admissible." *People v. Morgan*, 197 Ill. 2d 404, 455 (2001) (citing *People v. Hayes*, 139 Ill. 2d 89, 130 (1990)). "A trial court's decision concerning whether evidence is relevant and admissible

will not be reversed absent a clear abuse of discretion." *Id.* "An abuse of discretion will be found only where the trial court's decision is 'arbitrary, fanciful or unreasonable' or where no reasonable man would take the trial court's view." *Id.* (quoting *People v. Illgen*, 145 Ill. 2d 353, 364 (1991), quoting *People v. M.D.*, 101 Ill. 2d 73, 90 (1984)).

¶ 27        "All relevant evidence is admissible, except as otherwise provided by law." Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence." *Morgan*, 197 Ill. 2d at 455-56. "However, a trial court may reject evidence on the grounds of relevancy if the evidence is remote, uncertain or speculative." *Id.* at 456.

¶ 28        The circuit court abused its discretion in its determination that the prior employment evidence was not relevant. Prior to trial, the court granted the State's motion to allow other-crimes evidence to demonstrate defendant's criminal intent. In response, defendant's proffered witnesses would have provided an alternative theory regarding defendant's intent. See *People v. Wright*, 218 Ill. App. 3d 764, 771 (1991) (a defendant has the right to present a defense, present witnesses to establish a defense, and to present his version of the facts to the trier of facts). The circuit court excluded defendant's witnesses because they pertained to a different location, time, and individuals. In essence, the court found the evidence too remote in nature to be relevant. While Pekin, Peoria, and Peoria Heights, the locations where defendant's respective actions occurred, are different cities located in different counties, the cities are separated by a relatively short distance of a few miles. See *People v. Mata*, 217 Ill. 2d 535, 539-40 (2005) (a reviewing court may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy). Furthermore, yard work performed in fall 2018 is relatively close in time to the

10

actions in this case that occurred in March 2019. Such actions would shed light on defendant's intent at the time of the charged conduct.

¶ 29    Again, the relevancy bar is set low, and there is no question that, given the specific facts of this case, the prior employment evidence bore directly on defendant's intent. By allowing the State to admit other-crimes evidence to demonstrate defendant's intent while barring defendant's evidence to support his theory of intent, the circuit court abused its discretion and infringed on defendant's right to present a complete defense.

¶ 30    However, even errors of the constitutional dimension, such as denying a defendant a meaningful opportunity to present a defense, are subject to harmless error analysis. *People v. White*, 2017 IL App (1st) 142358, ¶¶ 30-31; *People v. Ramirez*, 2012 IL App (1st) 093504, ¶¶ 43-44; see *People v. Davis*, 233 Ill. 2d 244, 273 (2009) (most constitutional errors are subject to harmless-error analysis). Compare *People v. Thompson*, 238 Ill. 2d 598, 609 (2010) (errors not subject to harmless-error analysis include a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction). To establish that a circuit court's error was harmless, the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error. *People v. Herron*, 215 Ill. 2d 167, 181-82 (2005). The State cannot meet this burden here, where the evidence offered at trial was far from overwhelming and the error may have contributed to the conviction. See *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981).

¶ 31    At trial, the State's primary obstacle consisted of proving that defendant entered the dwellings in question "with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2018). To prove defendant's intent, the State presented the testimony of three

11

homeowners, all of whom stated that defendant had, on the same day, entered their homes without permission and inquired as to whether the homeowners were interested in defendant's lawn care services. The State argued this pattern established that defendant intended to commit thefts within the homes. This is not overwhelming evidence. The State did not show, for instance, that defendant handled the homeowners' belongings or fled from the scene upon discovering the homeowners were present, both of which would have been substantially more indicative of defendant's intent. Ultimately, the State's case regarding defendant's commission of residential burglary was tenuous, at best.

¶ 32    Moreover, the defense theory of the case was that defendant was no more than an overzealous door-to-door salesman who stepped over the line. The defense was not allowed a meaningful opportunity to substantiate this theory by presenting the testimony of several witnesses who had hired defendant on prior occasions to perform yard work, after receiving flyers that defendant had distributed.

¶ 33    The State's underwhelming evidence of intent, coupled with the court's hinderance of defendant's attempt to establish his intent, causes this court to question whether the jury would have returned the same verdict absent the error. Accordingly, disallowing defendant's prior employment evidence was not harmless. We reverse defendant's convictions and remand for a new trial. This resolution renders defendant's excessive sentence issue moot. On remand, we would instruct the circuit court to reconsider *sua sponte* joining the charges against defendant in the sole interest of judicial economy, as this is an improper basis, standing alone, on which to join criminal charges.

12

¶ 34                                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Peoria County is reversed and remanded for a new

trial.

¶ 36          Reversed and remanded with directions.